UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES DAVID MOSS,

      Plaintiff,                CIVIL ACTION NO. 15-cv-11576

      v.                           DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF         MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Charles David Moss seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1) Before the Court are Plaintiff's Motion for Summary Judgment (Docket no. 13) and Defendant's Motion for Summary Judgment (Docket no. 14) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (Docket no. 13) be GRANTED and Defendant's Motion for Summary Judgment (Docket no. 14) be DENIED.  It is further recommended that this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a proper assessment of the treating physician's opinion.

## II. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance and supplemental security income benefits with a protective filing date of February 14, 2012, alleging that he had been disabled since January 25, 2011, due to cervical and lumbar degenerative disc disease, chronic cervicalgenic headaches, depression and S/P Boxer's fracture, right hand, fifth metacarpal. (Docket no. 13) The Social Security Administration denied Plaintiff's claims on May 10, 2012, and Plaintiff requested a *de novo* hearing. (TR 107-115, 116) On May 21, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Lawrence E. Blatnik. (TR 46-77) In a July 26, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 34-42) On March 30, 2015, the Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (Docket no. 13, at 2-5), Defendant (Docket no. 14 at 2-9), and the ALJ (TR 38-40) each set out a detailed, factual recitation with regard to Plaintiff's medical record. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate these factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 25, 2011 and that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine. (TR 36) The ALJ also found that Plaintiff's depression was a non-severe impairment. (TR 36-37) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 37) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). He is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; he can sit at least six hours in an eight-hour work day; he can stand and/or walk up to two hours in an eight-hour work day, and he requires a sit/stand option than enables him to change position every 30 to 45 minutes. The claimant can never climb ladders, ropes or scaffolding; only occasionally balance, stoop, crouch, kneel, crawl, squat, or climb ramps or stairs; frequently reach overhead with upper extremities; can never use air, pneumatic, power, torque or vibratory tools; and cannot work around dangerous moving machinery or at unprotected heights.

(TR 37) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 41) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from January 25, 2011, the alleged onset date and the date of the decision, July 26, 2013. (TR 42)

V.   **LAW AND ANALYSIS**

    A.   **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127

F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

    **B.**    **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

> (1) Plaintiff was not presently engaged in substantial gainful employment; and
>
> (2) Plaintiff suffered from a severe impairment; and
>
> (3) the impairment met or was medically equal to a "listed impairment;" or
>
> (4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.  Analysis

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because the ALJ failed to properly evaluate Plaintiff's condition at Step Three of the sequential disability analysis and the opinion of his treating physician, Bruce Bigelow, M.D. (Docket no. 13 at 15-21) Plaintiff also asserts that the ALJ erred in failing to analyze the impact that plaintiff's depression had on his Residual Functional Capacity. (TR 21-23)

#### 1.  *Listed Impairment Analysis*

Plaintiff argues that the ALJ committed reversible error by not sufficiently evaluating his cervical and lumbar degenerative disc disease under Listing 1.04 at Step Three of the sequential disability analysis. (Docket no. 13, at 16-18)   Plaintiff contends that the ALJ's summary conclusion that the medical evidence fails to support the criteria of Listing 1.04 is so perfunctory it provides no opportunity for meaningful review and thus requires a remand.  Defendant, citing *Forrest v. Comm'r of Soc. Sec.*, 591 Fed. App'x 359 (6th Cir. 2014), argues that any error by the ALJ in reaching a summary conclusion at Step Three of the sequential analysis was harmless because the ALJ's discussion of the medical evidence in the RFC section of the decision identified findings to support the conclusion and satisfy the Step Three requirements. (Docket no. 14, at 12-16)

The Sixth Circuit has held that an ALJ commits reversible error by failing to analyze the claimant's physical condition in relation to the Listed Impairment.  *Reynolds v. Commissioner*, 424 F. App'x 411, 415–16 (6th Cir.2011).  In Reynolds, the court summarized the manner in which an ALJ should analyze a physical condition under the listed impairments (in that case, as in this one, a musculoskeletal disorder under Section 1.00):  "In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* at 416 (citing *Burnett v. Commissioner*, 220 F.3d 112, 120 (3d Cir.2000); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir.1999); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996)). The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate

court to trace the path of his reasoning.*" Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995). "It is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Sec'y HHS*, 753 F.2d 517, 519 (6th Cir.1985); *see also, Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012)

Notwithstanding *Reynolds*, the Sixth Circuit has expressly declined to adopt a blanket rule that remand is required whenever an ALJ "provides minimal reasoning at step three of the five-step inquiry." *Wischer v. Comm'r of Soc. Sec.,* 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), report and recommendation adopted sub nom. *Wischer ex rel. Ernst v. Comm'r of Soc. Sec.*, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015)(citing *Forrest*, 591 Fed. App'x at 366)). In *Forrest*, the ALJ found at Step Three of the sequential evaluation process only that the plaintiff's impairments did not meet or medically equal the severity of an impairment in the Listings. *Forrest*, 591 Fed.App'x at 366. The Court nonetheless held that the ALJ had adequately completed this step of the sequential analysis because the ALJ had "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id*.(citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir.2006) ("looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination, and finding no need to require the ALJ to 'spell out every fact a second time' "); *Burbridge v. Comm'r of Soc. Sec*., 572 F. App'x 412, 417 (6th Cir.2014) (Moore, J., dissenting) ("acknowledging that an ALJ's step-three analysis was 'cursory' but suggesting that, under our precedent, it is enough for the ALJ to support his findings by citing an exhibit where the exhibit contained substantial evidence to support his conclusion") (emphasis in original)); *see also Layton ex rel. B.O. v. Colvin*, No. 12–12934, 2013 WL 5372798, at *8, 15 (E.D.Mich. Sept.25, 2013) (finding harmless error in child's

SSI case where ALJ found without any analysis that claimant did not have an impairment that met or equaled the Listings and ALJ immediately moved on to compare the evidence to the six domains of functional equivalence; there was no need to speculate as to how the ALJ might have weighed the evidence because the plaintiff failed to identify any "conflicting or inconclusive evidence" that the ALJ failed to resolve or "evidence favorable to the claimant that the ALJ simply failed to acknowledge or consider.").

Here, as in *Forrest*, the ALJ rectified the perfunctory or non-existent analysis at Step Three by elsewhere articulating factual findings sufficient to address the criteria of the relevant Listing. Listing 1.04, disorders of the spine, include:

> (…herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>     A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>     or
>     B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>     or
>     C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt, App. 1, Section 1.04. Within the ALJ's discussion of Plaintiff's RFC, he notes, with citation to the medical record, that an April 2011 MRI of Plaintiff's lumbar spine noted a protrusion with displacement of intrathecal left L5 nerve root and bilateral L4-L5 facet degeneration, without evidence of spinal stenosis. (TR 38-39) The ALJ also noted an MRI

of the cervical spine showing degenerative disc disease with cervical spondylosis at C5-6 and C6-7, without spinal stenosis or cord encroachment. (TR 38) Physical examination of the cervical spine revealed no significant limitations in range of motion, with the exception of forward flexion and Plaintiff was noted to have positive straight leg raise bilaterally. (TR 38) The ALJ also notes, with citation to the medical record, that Plaintiff had intact sensation to touch, vibration and proprioception; and pinprick was intact in both lower and upper extremities. (TR 39) Plaintiff's posture, stance, gait, stride and arm-swing were normal. EMG testing showed normal nerve conduction and needle EMG in both arms. There was no electrodiagnostic evidence of any neuropathy, plexopathy, myopathy or radiculopathy affecting either arm. Normal muscle bulk and tone was noted in both upper and lower extremities, as was normal bilateral extremity strength. (TR 39) This litany of factual findings addresses the criteria of Listing 1.04.[1] In consideration of the Sixth Circuit's holding in *Forrest* and the ALJ's relevant discussion of the medical evidence supporting the RFC determination, the Court finds that the summary conclusion at Step Three of the sequential evaluation process does not amount to reversible error. *See Wischer*, 2015 WL 518658, at *13.

        2.    *The ALJ's Assessment of the Medical Evidence*

Next, Plaintiff argues that the ALJ failed to give good reasons for discounting the opinion of his treating physician, Dr. Bruce Bigelow. (Docket no. 13 at 18-21) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the

---

[1] According to ALJ's recitation of findings from Plaintiff's medical records, Plaintiff did not exhibit the motor, sensory or reflex loss required under Listing 1.04A, nor did he demonstrate the lumbar spinal stenosis mandated to meet Listing 1.04C. Plaintiff does not argue that he meets Listing 1.04B, nor does he identify any conflicting or inconclusive evidence that the ALJ failed to consider, or any evidence favorable to Plaintiff that the ALJ failed to acknowledge or consider.

record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The

district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

> The ALJ's discussion of Dr. Bigelow's opinion is reproduced below in its entirety:
>
> As for the opinion evidence, the claimant's treating physician, Bruce Bigelow, M.D., indicated the claimant had limitations that would be work preclusive, which also included an ability to sit, stand and/or walk for less than a total of eight hours during an eight-hour work day and projected absences from work more than three times per month (Exhibit 12F). However, Dr. Bigelow also indicated the claimant could walk four blocks at a time. I find nothing in the medical records, or the physician's own progress reports, to support these work-preclusive limitations. This physician's opinion is afforded minimal weight.

(TR 40)

The ALJ's explanation for discounting Plaintiff's treating physician's opinion in the instant matter is substantially similar to that in *Gayheart v. Comm'r of Soc. Sec.*, for which that case was remanded. 710 F.3d 365 (6th Cir. 2013). In *Gayheart*, the ALJ discounted the treating physician's opinions on the grounds that they were "not well-supported by any objective findings" and were "inconsistent with other credible evidence." 710 F.3d at 376. The Sixth Circuit found that those were not good reasons because the ALJ's first line of reasoning was ambiguous and because the ALJ did not support his second line of reasoning by identifying the evidence that was purportedly inconsistent with the treating physician's opinions. *Id.* at 376-77. Like the ALJ in *Gayheart*, the ALJ in the instant matter does not offer any explanation or

11

identify any evidence to support his conclusion that Dr. Bigelow's opinion is inconsistent with the hearing testimony and the medical record. The ALJ's perfunctory and conclusory statement in this regard makes review nearly impossible. The ALJ in the instant matter did not provide good reasons for discounting Dr. Bigelow's opinion, as it is not sufficiently specific to explain the reasoning behind the decision. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (An ALJ's explanation that "the record does not support the limitations of the severity suggested by [the claimant's treating physician]" is inadequate to satisfy the notice requirement discussed in Social Security Ruling (SSR) 96-7p.).

Defendant argues that the ALJ did provide adequate reasons for rejecting Dr. Bigelow's opinion and submits analysis and citations to the record in support of the ALJ's conclusions. (Docket no. 14 at 16-18.) But Defendant's post-hoc rationalization of the ALJ's assessment of Dr. Bigelow's opinion does not cure the ALJ's failure to provide good reasons. *See Christephore.*, 2012 WL 2274328, at \*6("[I]t is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's."). Accordingly, remand of this matter for a proper assessment of Dr. Bigelow's opinion is warranted.

Because this matter is being remanded for further proceedings, and in the interests of judicial economy, Plaintiff's remaining assignments of error will not be considered. Plaintiff's argument regarding the adequacy of the ALJ's consideration of Plaintiff's depression as part of the RFC assessment need not be addressed because a new RFC will be developed on remand.

**VI.     CONCLUSION**

For the reasons stated herein, the Court should GRANT Plaintiff's Motion for Summary Judgment (docket no. 13) and DENY Defendant's Motion for Summary Judgment (docket no. 14). This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a proper assessment of Dr. Hall's opinion.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 12, 2016    s/ Mona K. Majzoub
                        MONA K. MAJZOUB
                        UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: July 12, 2016          s/ Lisa C. Bartlett
                                    Case Manager